PORTER, PRICE ADMINISTRATOR, *v.* WARNER
HOLDING CO.

No. 793.   Argued May 2, 3, 1946.—Decided June 3, 1946.

*Milton Klein* argued the cause for petitioner. With him on the brief were *Solicitor General McGrath, Ralph F. Fuchs* and *David London.*

*G. W. Townsend* argued the cause for respondent. With him on the brief was *F. H. Fryberger.*

MR. JUSTICE MURPHY delivered the opinion of the Court.

In this case we are concerned with the power of a federal court, in an enforcement proceeding under § 205 (a) of the Emergency Price Control Act of 1942,[1] to order restitution of rents collected by a landlord in excess of the permissible maximums.

The Warner Holding Company, the respondent, owns eight apartment houses in Minneapolis, Minnesota, containing approximately 280 dwelling units. Between November 1, 1942, and June 29, 1943, it demanded and received rents in excess of those permitted by the applicable maximum rent regulations issued under the Act. The Administrator of the Office of Price Administration then brought this action in the District Court to restrain the respondent from continuing to exceed the rent ceilings. The complaint was later amended to seek, in addition, a decree requiring the respondent "to tender to such persons as are entitled thereto a refund of all amounts collected

---

[1] 56 Stat. 23, 33; 50 U. S. C. App. § 925 (a).

by defendant from tenants as rent for the use and occupancy of housing accommodations in excess of the maximum rents established by said Regulation, provided, however, that defendant shall not be required to make such tender to any person who has commenced an action against defendant under Section 205 (e) of the Emergency Price Control Act of 1942 alleging the collection by defendant of rent in excess of the maximum rents established by said Regulation."

The District Court enjoined respondent from continuing to collect rents in excess of the legal maximums but declined to order restitution. 60 F. Supp. 513. The Eighth Circuit Court of Appeals affirmed the judgment. 151 F. 2d 529. Both courts held that there was no jurisdiction under the statute to order restitution. We granted certiorari because the result was in conflict with that reached by the Sixth Circuit Court of Appeals in *Bowles* v. *Skaggs*, 151 F. 2d 817, and because of the obvious importance of the issue in the administration and enforcement of the Emergency Price Control Act.

This proceeding was instituted by the Administrator under § 205 (a) of the Act, which provides: "Whenever in the judgment of the Administrator any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of section 4 of this Act, he may make application to the appropriate court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, and upon a showing by the Administrator that such person has engaged or is about to engage in any such acts or practices a permanent or temporary injunction, restraining order, or other order shall be granted without bond."

Thus the Administrator invoked the jurisdiction of the District Court to enjoin acts and practices made illegal

by the Act and to enforce compliance with the Act.   Such a jurisdiction is an equitable one.   Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction.   And since the public interest is involved in a proceeding of this nature, those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake. *Virginian R. Co.* v. *System Federation,* 300 U. S. 515, 552. Power is thereby resident in the District Court, in exercising this jurisdiction, "to do equity and to mould each decree to the necessities of the particular case." *Hecht Co.* v. *Bowles,* 321 U. S. 321, 329.   It may act so as to adjust and reconcile competing claims and so as to accord full justice to all the real parties in interest; if necessary, persons not originally connected with the litigation may be brought before the court so that their rights in the subject matter may be determined and enforced.   In addition, the court may go beyond the matters immediately underlying its equitable jurisdiction and decide whatever other issues and give whatever other relief may be necessary under the circumstances.   Only in that way can equity do complete rather than truncated justice.   *Camp* v. *Boyd,* 229 U. S. 530, 551–552.

Moreover, the comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command.   Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. "The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction." *Brown* v. *Swann,* 10 Pet. 497, 503.   See also *Hecht Co.* v. *Bowles, supra,* 330.

It is readily apparent from the foregoing that a decree compelling one to disgorge profits, rents or property ac-

quired in violation of the Emergency Price Control Act may properly be entered by a District Court once its equity jurisdiction has been invoked under § 205 (a). Indeed, the language of § 205 (a) admits of no other conclusion. It expressly envisages applications by the Administrator for orders enjoining violations of the Act and for orders enforcing compliance with the Act; and it expressly authorizes the District Court, upon a proper showing, to grant "a permanent or temporary injunction, restraining order, or other order." As recognized in *Hecht Co.* v. *Bowles, supra,* 328, the term "other order" contemplates a remedy other than that of an injunction or restraining order, a remedy entered in the exercise of the District Court's equitable discretion. An order for the recovery and restitution of illegal rents may be considered a proper "other order" on either of two theories:

(1) It may be considered as an equitable adjunct to an injunction decree. Nothing is more clearly a part of the subject matter of a suit for an injunction than the recovery of that which has been illegally acquired and which has given rise to the necessity for injunctive relief. To be sure, such a recovery could not be obtained through an independent suit in equity if an adequate legal remedy were available.[2] *White* v. *Sparkill Realty Corp.,* 280 U. S. 500; *Lacassagne* v. *Chapuis,* 144 U. S. 119. But where, as here, the equitable jurisdiction of the court has properly been invoked for injunctive purposes, the court has the power to decide all relevant matters in dispute and to award complete relief even though the decree includes that which might be conferred by a court of law. *Alexander* v. *Hillman,* 296 U. S. 222, 241–242.

---

[2] But if a defendant with notice of a pending injunction proceeding completes the acts sought to be enjoined, the court of equity may restore the status quo by means of a mandatory injunction. *Texas & N. O. R. Co.* v. *Northside Belt R. Co.,* 276 U. S. 475; *Porter* v. *Lee,* 328 U. S. 246.

(2) It may be considered as an order appropriate and necessary to enforce compliance with the Act. Section 205 (a) anticipates orders of that character, although it makes no attempt to catalogue the infinite forms and variations which such orders might take. The problem of formulating these orders has been left to the judicial process of adapting appropriate equitable remedies to specific situations. Cf. *Phelps Dodge Corp.* v. *Labor Board,* 313 U. S. 177, 194. In framing such remedies under § 205 (a), courts must act primarily to effectuate the policy of the Emergency Price Control Act and to protect the public interest while giving necessary respect to the private interests involved. The inherent equitable jurisdiction which is thus called into play clearly authorizes a court, in its discretion, to decree restitution of excessive charges in order to give effect to the policy of Congress. *Clark* v. *Smith,* 13 Pet. 195, 203. And it is not unreasonable for a court to conclude that such a restitution order is appropriate and necessary to enforce compliance with the Act and to give effect to its purposes. Future compliance may be more definitely assured if one is compelled to restore one's illegal gains; and the statutory policy of preventing inflation is plainly advanced if prices or rents which have been collected in the past are reduced to their legal maximums.

The legislative background of § 205 (a) confirms our conclusion that the traditional equity powers of a court remain unimpaired in a proceeding under that section so that an order of restitution may be made. The Senate Committee on Banking and Currency, in reporting upon the bill which became the Emergency Price Control Act, stated in regard to § 205 (a): "In common with substantially all regulatory statutes, the bill authorizes the official charged with the duty of administering the act to apply to any appropriate court, State or Federal, for an order

enjoining any person who has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of the bill. Such courts are given jurisdiction to issue whatever order to enforce compliance is proper in the circumstances of each particular case." S. Rep. No. 931, 77th Cong., 2d Sess., p. 10.[3] The last sentence is an unmistakable acknowledgement that courts of equity are free to act under § 205 (a) in such a way as to be most responsive to the statutory policy of preventing inflation.

It is true that § 205 (e) authorizes an aggrieved purchaser or tenant to sue for damages on his own behalf; and if that person has not sued within the statutory period, or for any reason is not entitled to sue, the Administrator may institute an action for damages on behalf of the United States.[4] To the extent that damages might properly be awarded by a court of equity in the exercise of its jurisdiction under § 205 (a), see *Veazie* v. *Williams*, 8 How. 134, 160, § 205 (e) supersedes that possibility and provides an exclusive remedy relative to damages. It establishes the sole means whereby individuals may assert their private right to damages and whereby the Administrator on behalf of the United States may seek damages in the na-

---

[3] The same report, at p. 25, also states: "Section 205 (a) authorizes the Administrator to enforce compliance with the provisions of section 4 of the bill, whenever in his judgment, any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of section 4, by making application to the appropriate court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision. Upon a showing by the Administrator that such person has engaged or is about to engage in any such acts or practices, a temporary or permanent injunction, restraining order or other order is to be granted without bond."

[4] § 205 (e) as amended by the Stabilization Extension Act of 1944, 58 Stat. 632, 640–641; 50 U. S. C. App. § 925 (e).

ture of penalties.[5] Moreover, a court giving relief under § 205 (e) acts as a court of law rather than as a court of equity. But with the exception of damages, § 205 (e) in no way conflicts with the jurisdiction of equity courts under § 205 (a) to issue whatever "other order" may be necessary to vindicate the public interest, to compel compliance with the Act and to prevent and undo inflationary tendencies.

Restitution, which lies within that equitable jurisdiction, is consistent with and differs greatly from the damages and penalties which may be awarded under § 205 (e). *Bowles* v. *Skaggs, supra,* 821. When the Administrator seeks restitution under § 205 (a), he does not request the court to award statutory damages to the purchaser or tenant or to pay to such person part of the penalties which go to the United States Treasury in a suit by the Administrator under § 205 (e). Rather he asks the court to act in the public interest by restoring the status quo and ordering the return of that which rightfully belongs to the purchaser or tenant. Such action is within the recognized power and within the highest tradition of a court of equity. Thus it is plainly unaffected by the provisions of § 205 (e).

---

[5] Congress has recognized that this provision for damage actions affords "a remedy at law to persons damaged by having had to pay unlawfully high prices." S. Rep. No. 931, 77th Cong., 2d Sess., p. 9. It has also been stated that "This action is the people's remedy against inflation. It was written into the statute because the Congress recognized the practical need of this aid to enforcement." S. Rep. No. 922, 78th Cong., 2d Sess., p. 14. The amendment to § 205 (e), whereby the Administrator was allowed to sue for damages under prescribed conditions, was said to "close an important gap in the present system of enforcement sanctions." *Id.* Nowhere, however, was there any indication that § 205 (e) was intended to whittle down the equitable jurisdiction recognized by § 205 (a) so as to preclude a suit for restitution.

Nor do we find any other provision of the Act that expressly or impliedly precludes a court from ordering restitution in the exercise of its equity jurisdiction under § 205 (a). This is not a situation where a statute has created a right and has provided a special and exclusive remedy, thereby negativing any jurisdiction that might otherwise be asserted. *United States* v. *Babcock,* 250 U. S. 328. And it clearly is not an instance where equity jurisdiction is lacking because of a failure to exhaust prescribed administrative remedies. *Myers* v. *Bethlehem Corp.,* 303 U. S. 41. Rather it is an occasion where Congress has utilized, save in one aspect, the broad equitable jurisdiction that inheres in courts and where the proposed exercise of that jurisdiction is consistent with the statutory language and policy, the legislative background and the public interest.

It follows that the District Court erred in declining, for jurisdictional reasons, to consider whether a restitution order was necessary or proper under the circumstances here present. The case must therefore be remanded to that court so that it may exercise the discretion that belongs to it. Should the court decide to issue a restitution order and should there appear to be conflicting claims and counterclaims between tenants and landlord as to the amounts due, the court has inherent power to bring in all the interested parties and settle the controversies or to retain the case until the matters are otherwise litigated. *Mallow* v. *Hinde,* 12 Wheat. 193.

*Reversed.*

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.

MR. JUSTICE RUTLEDGE, dissenting.

In the Emergency Price Control legislation Congress was as much concerned with remedies as with substantive

prohibitions.[1] It knew that effectiveness of the latter depended altogether upon the scheme for enforcement. Accordingly, both in the original Act [2] and in later amendments,[3] it covered the matter of remedies in the greatest detail and precision. Those provisions were both jurisdictional and procedural. The general scheme was to confine as narrowly as the Constitution allows the rights of regulated persons to challenge provisions of the Act and regulations; and at the same time to create broad powers for enforcement, by various civil and criminal sanctions. *Yakus* v. *United States,* 321 U. S. 414, dissenting opinion, 463. Congress did not take chances, in either respect, with inference or construction. It is not excessive to say that perhaps no other legislation in our history has equalled the Price Control Act in the wealth, detail, precision and completeness of its jurisdictional, procedural and remedial provisions. *Yakus* v. *United States, supra.*

The scheme of enforcement was highly integrated, with the parts precisely tooled and minutely geared. Legal, equitable and criminal sanctions were included. Injured persons' remedies were dovetailed with and guarded against overlapping those given the Administrator. He can sue for damages and penalties, after the injured party has failed to do so in the time allowed; [4] to enjoin viola-

---

[1] See H. Rep. No. 1409, 77th Cong., 1st Sess., 12–13; S. Rep. No. 931, 77th Cong., 2d Sess., 8–9, 25–28; H. Rep. No. 1658, 77th Cong., 2d Sess., 26–27. "Price control which cannot be made effective is at least as bad as no price control at all. It will not stop inflation, and enables those who defy regulation to profit at the expense of the buyers and sellers who unselfishly cooperate in the interests of the emergency." S. Rep. No. 931, *supra,* p. 8.

[2] § 205, 56 Stat. 23, 33–35.

[3] 58 Stat. 632, 640–641, amending subsections (c), (e), and (f) of § 205 as it was in the original Act and adding subsection (g).

[4] § 205 (e), 50 U. S. C. § 925 (e). See note 9.

tion or secure an order for compliance, with temporary and permanent relief; [5] cause institution of criminal proceedings; [6] and require licensing of dealers with power to suspend the license and thus drive out of business.[7] This powerful battery of weapons does not call for reinforcement with armor not provided in the Act. It was equal to all tasks of enforcement which conceivably could arise.

Congress could not have been ignorant of the remedy of restitution. It knew how to give remedies it wished to confer. There was no need to add this one. Nor do I think it did so. It did not give it expressly. I do not think "other order" in the context of § 205 (a) includes it. For to have conferred it would have put the statutory scheme out of joint.

---

[5] § 205 (a): "Whenever in the judgment of the Administrator any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of section 4 of this Act, he may make application to the appropriate court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, and upon a showing by the Administrator that such person has engaged or is about to engage in any such acts or practices a permanent or temporary injunction, restraining order, or other order shall be granted without bond." 50 U. S. C. § 925 (a).

[6] § 205 (b): "Any person who willfully violates any provision of section 4 of this Act, and any person who makes any statement or entry false in any material respect in any document or report required to be kept or filed under section 2 or section 202, shall, upon conviction thereof, be subject to a fine of not more than $5,000, or to imprisonment for not more than two years in the case of a violation of section 4 (c) and for not more than one year in all other cases, or to both such fine and imprisonment. Whenever the Administrator has reason to believe that any person is liable to punishment under this subsection, he may certify the facts to the Attorney General, who may, in his discretion, cause appropriate proceedings to be brought." 50 U. S. C. § 925 (b). § 205 (c), 50 U. S. C. § 925 (c). See *Kraus & Bros.* v. *United States*, 327 U. S. 614, 620, note 4.

[7] § 205 (f), 50 U. S. C. § 925 (f).

Section 205 (e) gives the overcharged person his remedy, for damages with penalty, for a limited time. Thereafter the exclusive right to sue is the Administrator's, and what he recovers goes into the Federal Treasury, not to the overcharged person. This includes the amount of the overcharge, which is sued for here. These provisions taken together are a statute of limitations on the private right of recovery. Once the time goes by, it is cut off and the Government's right takes its place, in vindication of the public interest.[8]

Restitution, as here sought, is inconsistent with both rights. It contemplates return of the unjustly taken enrichment to him from whom it was taken. It is that right the Administrator now seeks to assert. But he does so, I think, in the teeth of the statute. What he recovers is what the Act makes part of a sum it says shall be paid into the Treasury whenever recovered by the Administrator; or into the overcharged person's pocket when recovered by him. And these are mutually exclusive, not alternative, rights of recovery. If the Administrator pays over to the tenants what he recovers in this suit, he will be paying them money which the Act says shall go into the Treasury.[9] Their time for suit has passed and with it their right

---

[8] Under § 205 (e) in the original Act, 56 Stat. 34, the Administrator was entitled to bring a suit for damages and penalties only when the buyer was not entitled to bring such an action. See, e. g., *Bowles* v. *Glick Bros. Lumber Co.*, 146 F. 2d 566. The Act was subsequently amended to provide, as set out in the text, that the Administrator could bring a suit for damages and penalties also when the injured party had not brought such an action within thirty days from the date of the occurrence of the violation. 58 Stat. 640. See note 9. The suit at bar was brought before the passage of the amendment, but that fact is of no significance, since § 205 (e), whether taken in its original or amended form, is inconsistent with the remedy of restitution sought by the Government.

[9] § 205 (e): "If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum

to recover these amounts. Whether or not the Administrator can sue for these amounts, on behalf of the Government, foregoing the penalties, we are not asked to decide. But we are asked, in effect, to decide that he can take money the Act says shall go into the Treasury and

---

prices, *the person who buys* such commodity for use or consumption other than in the course of trade or business *may, within one year* from the date of the occurrence of the violation, except as hereinafter provided, *bring an action* against the seller *on account of the overcharge. In such action, the seller shall be liable for* reasonable attorney's fees and costs as determined by the court, plus whichever of the following sums is the greater: (1) *Such amount not more than three times the amount of the overcharge, or the overcharges,* upon which the action is based as the court in its discretion may determine, *or* (2) an amount not less than $25 nor more than $50, as the court in its discretion may determine: *Provided, however,* That such amount shall be the amount of the overcharge or overcharges or $25, whichever is greater, if the defendant proves that the violation of the regulation, order, or price schedule in question was neither wilfull [*sic*] nor the result of failure to take practicable precautions against the occurrence of the violation. *For the purposes of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity,* as the case may be; *and the word 'overcharge' shall mean the amount by which the consideration exceeds the applicable maximum price. If* any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, and *the buyer either fails to institute an action under this subsection within thirty days* from the date of the occurrence of the violation *or is not entitled* for any reason *to bring the action, the Administrator may institute such action on behalf of the United States within such one-year period.* If such action is instituted by the Administrator, *the buyer shall thereafter be barred from bringing an action* for the same violation or violations. Any action under this subsection by either the buyer or the Administrator, as the case may be, may be brought in any court of competent jurisdiction. A judgment in an action for damages under this subsection shall be a bar to the recovery under this subsection of any damages in any other action against the same seller on account of sales made to the same purchaser prior to the institution of the action in which such judgment was rendered." 50 U. S. C. § 925 (e). (Emphasis added.)

give it to persons whose right to recover it the Act has cut off.

I think the remedy now sought is inconsistent with the remedies expressly given by the statute and contrary to the substantive rights it creates. I think too this is why Congress failed to provide for restitution, indeed cut off that remedy.

This does not imply any restriction upon the creative resources of a court of equity. When Congress is silent in formulating remedies for rights which it has created, courts of equity are free to use these creative resources. But where Congress is explicit in the remedies it affords, and especially where Congress after it has given limited remedies enlarges the scope of such remedies but particularizes them so far as remedies for overcharges are afforded, even courts of equity may not grant relief in disregard of the remedies specifically defined by Congress.

MR. JUSTICE REED and MR. JUSTICE FRANKFURTER join in this opinion.