## WOODS v. KOOKER.

### Civ. No. 790.

United States District Court
W. D. Arkansas, Fort Smith Division.
April 11, 1949.

Thomas R. R. Ely, Litigation Atty. of St. Louis, Mo., for plaintiff.

Maurice D. Bedwell, Jr., of Fort Smith, Ark., for defendant.

JOHN E. MILLER, District Judge.

Complaint was filed November 6, 1948, alleging that the defendant, as owner of controlled housing accomodations, had demanded and received rent in excess of the maximum legal rent, and praying that an injunction issue against the defendant and that he be required to restore to the tenants the rent overcharges.

Answer was filed November 26, 1948, alleging that the schedule to plaintiff's complaint setting forth the overcharges con-

tained an error in that the defendant was not the owner of the property involved prior to February 1, 1948, but admitting that the housing accomodations were rented to the tenants named from February 1, 1948, to September 1, 1948, for the amount of rent set forth in said schedule. By way of defense defendant alleges that plaintiff, because of certain action of the Area Rent Control Officer in advising defendant of the status of the property, is now estopped from claiming the relief prayed for in the complaint.

The cause came on for trial to the Court on February 15, 1949, at which time ore tenus testimony, with exhibits thereto, was adduced. At the conclusion of the trial, the Court granted a request of defendant for time within which to take the deposition of the tenant, Lloyd Carver, and a request of the plaintiff to take the deposition of certain attaches of the rent control office at Harlingen, Texas, and the case was submitted, with the decision on the merits to be withheld pending receipt of said depositions. The depositions have now been received, and the Court, after considering the ore tenus testimony adduced at the trial, the exhibits thereto, and the depositions, makes and files herein the following findings of fact and conclusions of law, separately stated.

### Findings of Fact.

1. The defendant, who at the time was a resident of Edinburg, Texas, on January 19, 1948, purchased two houses in that city, one located at 601 North 10th Street, and the other located at 609 North 10th Street, by trading other property of the approximate value of $11,000 therefor. Defendant went into possession on February 1, 1948.

2. At that time, the house located at 601 North 10th Street, was occupied by Lloyd Carver, as tenant, and was renting for $35 per month. Carver remained in that house as tenant from the date of defendant's acquisition thereof, February 1, 1948, until defendant sold the same on September 1, 1948, and during that period paid a monthly rental of $35, and a total rental of $245.

3. On February 1, 1948, defendant rented the house located at 609 North 10th Street to Joe F. Gallia for a monthly rental of $40. Gallia remained as tenant from February 1, 1948, until the sale of the property by defendant, September 1, 1948, and during that period paid a monthly rental of $40, with the exception of the first month, from February 1, 1948, to March 1, 1948, for which period he paid $30, and a total rental of $270.

4. The area rent control office was located at Harlingen, Texas, some 35 miles from Edinburg, Texas. After acquiring the property in question defendant went to Harlingen, and upon inquiry at the rent control office, was informed that an examination of the records failed to disclose a registration record of the property. Thereupon, defendant returned to Edinburg and continued to collect the rent on the property until September 1, 1948, at which time he sold it and moved to Lowell, Arkansas, where he now resides.

5. The property had been registered by a prior owner, and the maximum legal rental fixed at $20 per month on each house. Therefore, the property was within a defense rental area, and was controlled housing within the provisions of the Housing and Rent Act of 1947, as amended, 50 U.S.C.A.Appendix, 1881 et seq., with a maximum legal rental, during the period of time it was owned by the defendant. It does not appear why the registration record was not made available to the defendant when he inquired at the rent control office.

6. On the property located at 601 North 10th Street, the defendant collected total overcharges of $105, computed at $15 per month for 7 months.

On the property located at 609 North 10th Street, the defendant collected total overcharges of $130 computed at $20 per month for 6 months and at $10 for 1 month.

7. The houses contained five rooms and bath, with double garage attached, and were approximately 8 years old at the time defendant purchased them. During the period of his ownership he collected a total of $515 in rent, and expended approximately $700 in repairs.

8. Neither of the tenants expressed any dissatisfaction with the property or the

amount of the rental during their occupancy under the defendant, and neither has filed suit to recover the amount of the overcharges. Furthermore, the tenant, Lloyd Carver, in his deposition states that he was well satisfied with the rental and has never, and does not at this time, desire any refund from the defendant. Defendant, of course, has made no refund to either.

### Discussion.

There is no longer any serious dispute as to the governing principles of law in an action by the Housing Expediter against a landlord for an injunction and for restitution of alleged overcharges to the tenants.

In Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754, the Supreme Court held that the granting of an injunction, upon application of the appropriate officer, now Housing Expediter, and a showing that defendant had engaged in acts violative of the Act, at that time Emergency Price Control Act of 1942, 50 U.S. C.A.Appendix, § 901 et seq., and now the Housing and Rent Act of 1947, as amended, was not mandatory but was within the discretion of the Court. At page 329 of 321 U.S., at page 591 of 64 S.Ct., the Court said: " * * * We are dealing here with the requirements of equity practice with a background of several hundred years of history. Only the other day we stated that 'An appeal to the equity jurisdiction conferred on federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity.' Meredith v. Winter Haven, 320 U.S. 228, 235, 64 S.Ct. 7, 11 [88 L.Ed. 9]. The historic injunctive process was designed to deter, not to punish. The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mold each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it."

The basis of the plaintiff's prayer for restitution lies in the case of Porter v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332. In that case the Supreme Court held that the language employed by Congress, "a permanent or temporary injunction, restraining order, or other order" necessarily included an order for the recovery and restitution of illegal rents, and placed its holding on either of two theories: (1) As an equitable adjunct to an injunction decree; or (2) as an order appropriate and necessary to enforce compliance with the Act. As the remedy of restitution has its foundation in equity, it, of course, is a matter addressed to the sound discretion of the Court, and each case must be examined in the light of its own facts. As stated in Warner Holding Co. v. Creedon, Housing Expediter, 8 Cir., 166 F.2d 119, 122: "But in any event it was for the District Court in the exercise of its discretion to decide whether it should make any order of restitution and, if so, to fix the terms, conditions, and extent of the appropriate order."

The facts of the instant case, hereinbefore set forth, are not such as to entitle the plaintiff to the relief prayed for.

This Court is well aware of the fact that it cannot alter the order fixing the maximum rental. Woods v. Hills, 334 U.S. 210, 68 S.Ct. 992. Whether the maximum rental fixed was inequitable or unjust is not the question before the court, and the parties in this case are bound by the maximum rental in effect at the time. However, the mere fact that there was an overcharge, and that is undisputed here, is not conclusive in the Court's determination of whether an injunction and restitution should be granted. For, if that were so, it obviously would not be a discretionary matter. Therefore, the evidence adduced at the trial of this case pertaining to the purchase of this property by the defendant, the extent of his property holdings, the rental being paid by the tenants at the time of purchase, the expenses incurred by defendant on the property, the absence of complaints by the tenants while defendant was the owner, the nature of and condition of the property, and the steps taken by defendant to ascertain the status of his property under the Housing Act, was admitted, not for the purpose of adjudicating the merits of the order fixing the maximum rental at $20, but for the purpose of presenting the entire picture to the Court, in order that it might fairly and justly ex-

ercise a judicial discretion in determining whether the facts of this case call for the granting of an injunction and an order of restitution.

The fact that the defendant was acting in good faith and not attempting to enrich himself at the expense of the tenants in willful violation of the Housing Act is important. Rent control has been in effect long enough for there to be little or no justification, under the law, for willful overcharges. Furthermore, ignorance of the law alone should not constitute a sufficient excuse for overcharging a tenant. In this regard the action taken by this defendant to ascertain the status of his property under the Housing Act is not alone a justification for collecting an excessive amount of rent, for he is bound by the order that was in effect at the time, but his action may be considered, along with all other facts, in arriving at the equities in the case. Again, the question is not whether the rent collected was illegal under the letter of the law, but whether the defendant should be required to return the excess collected and be enjoined from future violations.

The tenants were apparently well satisfied at the time with the rental. This, also, is of no importance in many cases, because in an area of limited housing facilities a tenant is at a definite disadvantage and cannot afford to object to the rental requested. However, one tenant in this case has testified by deposition that he was well satisfied with the rental, and does not desire any refund at this time. Likewise, these facts are alone not conclusive but may be considered.

The defendant has long since sold the property involved, and does not now own any property from which he receives rent. He is in no sense a professional landlord, and an injunction, under these facts, would accomplish no useful purpose.

From all of the facts, the Court believes that this is not a proper case for the granting of the relief prayed for by the plaintiff.

Conclusions of Law.

1. The Court has jurisdiction of the parties and of the subject matter of this cause. Title 50 U.S.C.A.Appendix, § 1896.

2. The facts of this case are not such as to justify the entry of an injunction against the defendant, nor do they justify the entry of an order requiring defendant to restore to the tenants the rent overcharges.

3. Judgment in accordance with the above, dismissing the complaint of plaintiff, should be entered, and the exceptions of the plaintiff noted therein.