**WOODS v. GATE CITY AGENCY, Inc. et al.**
**Civ. No. 338.**

United States District Court
D. Minnesota, First Division.
Aug. 29, 1949.

William S. Kaplan, Chief, Litigation Section, and Eugene T. Devitt, Litigation Attorney, Office of the Housing Expediter, Chicago, Illinois, for plaintiff.

C. Stanley McMahon (of George, Brehmer & McMahon), Winona, Minnesota, for defendants.

NORDBYE, Chief Judge.

On or about June 29, 1948, defendant corporation owned and rented a certain house which was subject to the Rent Control Act of 1947, as amended. 50 U.S.C.A. Appendix, § 1881 et seq. Defendant Sloggie (correctly spelled Slaggie) was president of the corporation. And on or about June 29, 1948, he wrote on behalf of the corporation the following letter to the tenant occupying the house in question: "Dear Mr. & Mrs. Becker:

"This is to advise you that our plan is to remodel the property you are now in possession of, making it into a four apartment building instead of two. This will necessitate a considerable amount of changing in the interior, and will make it necessary for you to vacate the premises, which according to the Rent Control Law would be sixty days from this date.

"The Rent Control Office advises us we must send you a registered letter to this effect, with a return card signed by you, therefore we are using this means to advise you.

"Should you vacate the property before the sixty day period, we shall be glad to arrange for the adjustment of the rent for the time you are in possession of the property.

"Yours very truly,
"Gate City Agency, Inc.
By: /s/ L. Slaggie"

The Beckers moved as a result of the letter. But the defendant corporation did not remodel the house. Instead it sold the property to another person who remodeled it into a four-plex.

The Housing Expediter now contends that the notice by the defendants to the Beckers was not given in good faith as required by Section 209(a) (4) of the Rent Act and seeks an injunction enjoining further violations of the Act. He also requests the Court to award the Beckers certain damages they allegedly suffered as a result of defendants' alleged bad faith.

The Expediter points to Section 209(a) (4), which provides,

"No action or proceeding to recover possession of any controlled housing accommodations with respect to which a maximum rent is in effect under this title shall be maintainable by any landlord against any tenant in any court, notwithstanding the fact that the tenant has no lease or that his lease has expired, so long as the tenant continues to pay the rent to which the landlord is entitled unless—
\* \* \* \* \* \* \*

"(4) The landlord seeks in good faith to recover possession of such accommodations (A) for the immediate purpose of substantially altering or remodeling the same for continued use as housing accommodations, or for the immediate purpose of conversion into additional housing accommodations, and the altering, remodeling, or conversion cannot practically be done with the tenant in occupancy, and the landlord has obtained such approval as may be required by Federal, State, or local law for the alterations, remodeling, or any conversion planned, or (B) \* \* \*."

Section 209(c) of the Act provides, "No tenant shall be obliged to surrender possession of any housing accommodations pursuant to the provisions of paragraph (2), (3), (4), (5), or (6) of subsection (a) until the expiration of at least sixty days after written notice from the landlord that he desires to recover possession of such housing accommodations for one of the purposes specified in such paragraphs."

Section 206 of the Act provides,

"(a) It shall be unlawful for any person to \* \* \* do or omit to do any act in violation of any provision of this title.

"(b) Whenever in the judgment of the Housing Expediter any person has engaged or is about to engage in any act or practice which constitutes or will constitute a violation of any provision of this title, he may make application to any Federal, State, or Territorial court of competent jurisdiction, for an order enjoining such act or practice, or for an order enforcing compliance with such provision, and upon a showing by the Housing Expediter that such person has engaged or is about to engage

in any such act or practice a permanent or temporary injunction, restraining order, or other order shall be granted without bond."

Defendants have moved both for judgment on the pleadings and for summary judgment upon the ground that the undisputed facts establish that defendants have not violated Section 209(a) (4). Defendants contend that Section 209(a) (4) only forbids the landlord from conducting any "action or proceeding * * * in court", and that the letter written by the defendant Slaggie was not a part of such a proceeding and that, therefore, plaintiff is not authorized under the Act to apply for any relief herein. Defendants further contend that, even if the statute was violated, and an injunction should issue, the Court cannot, in the injunction proceedings, order paid to the tenant any damages allegedly suffered by the tenant as a result of the violations.

For the purpose of this motion, the Court must assume that Slaggie wrote the letter with the intent to notify the tenants that they must vacate the premises within sixty days. The question of bad faith also must be assumed against defendants on this motion, for that factual question is in issue: The question therefore is whether the defendants violated Section 209(a) (4) when they in bad faith notified the tenant to vacate the premises, and acting on the notice given in accordance with Section 209(c), the tenant did vacate the premises. If there was a violation of the Act, it follows that the Expediter is authorized to apply for injunctive relief.

The Rent Control Act of 1947, as amended, was a remedial statute. It was enacted as a temporary measure for emergency needs. Its purpose was to prevent an inflationary increase in rents. And in accordance with that purpose it intended to prevent the landlord from obtaining possession, increasing rents, or doing other acts except upon the grounds which Congress believed would not encourage inflation. These grounds therefore must be interpreted liberally and applied strictly, according to the purpose of the Act. The provision of which they are a part must be read as a whole and in accordance with the Act's purpose. The grounds upon which the landlord could obtain possession of the rented property are set forth in Section 209(a) (4), and only by following those grounds could the landlord obtain possession. In the instant case, the Expediter alleges that the defendants represented that they sought to obtain possession for the remodeling of the property. That was one of the grounds permitting possession under Section 209(a) (4). The Expediter also alleges that the defendants were not acting in good faith as required by this section when they gave the sixty days' notice which purported to conform to the statutory requirement.

In determining the tenant's right of possession, we must look to Section 209(a) (4). If the Court cannot evict a tenant unless certain conditions and grounds are satisfied, then it must follow that the landlord has no right to possession under the statute except on those grounds. To phrase a statute in terms of the grounds which must exist before an action for possession may be maintained by the landlord is merely another way of stating the extent of the tenant's right to possession. The legal rights of the tenant are to be found in Section 209(a) (4), and if the landlord has violated these rights in obtaining an eviction on fraudulent grounds, the right of the Expediter to proceed in equity seems clear. The defendants also appear to have recognized that Section 209(a) (4) states the exclusive grounds for obtaining possession of the rented premises. Their notice purported to comply with the statutory requirements as to conditions which required the tenant to move and the time within which the tenant was obliged to move. It will be observed that the surrendering of possession by the tenant under Section 209(c) makes no mention of court proceedings, or that the tenant must await an eviction order of the court before acting on the sixty-day notice. To contend, therefore, that Section 209(a) (4) is not violated by the landlord except by the institution of a court action to evict the tenant is to ignore the clear intendment of the statute, and goes to the form in which the provision is written, not to its substance. The very purpose of Section 209(a) (4) was to retain the status quo of all controlled housing accommodations except in the specific situations which the section enumerates.

Defendants' construction would mean that a landlord could obtain possession by any means whatsoever if he could avoid bringing an action in court for possession. That Congress did not intend to permit such an unregulated result in view of the Act's purpose to prevent evictions seems too evident for argument.

That violations of the Act may occur upon the attempt of the landlord to evict a tenant by notice short of a court action has never been challenged by any court decision called to our attention. On the contrary, in Woods v. Hillcrest Terrace Corp., 8 Cir., 1948, 170 F.2d 980, the Expediter proceeded in equity to restrain eviction upon an attempt by a landlord to obtain eviction by serving notices which were not in good faith. The Court of Appeals for this Circuit, reversing the lower court, held that the complaint did state a cause of action and should not have been dismissed. The Court also granted a temporary injunction against the landlord pending trial.

█ Defendants' contention that damages cannot be awarded the tenant even if an injunction is granted is disputed by the Expediter upon the authority of Porter v. Warner Holding Co., 1945, 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332. In that case, the Supreme Court held that a court which granted an injunction prohibiting violation of the Rent Control Act of 1942, 56 Stat. 23, 33, 50 U.S.C.A.Appendix, §§ 901 et seq. 925, also possessed the equity jurisdiction to order restitution of overcharges. According to the Warner case, Congress intended the courts to retain their equity powers except as limited by that part of the statute referring to damages in the nature of penalties. Speaking broadly of the court's equitable jurisdiction in injunctive actions, the court held, 328 U.S. page 398, 66 S.Ct. page 1089:

" * * * Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction. And since the public interest is involved in a proceeding of this nature, those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake. * * * In addition, the court may go beyond the matters immediately underlying its equitable jurisdiction and decide whatever other issues and give whatever other relief may be necessary under the circumstances. Only in that way can equity do complete rather than truncated justice. * * *

"Moreover, the comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. 'The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.' "

Thus, the Warner decision's fundamental principles extend beyond the court's equitable power to grant restitution. If the court's equity jurisdiction is not limited by the statute, the court possesses its full equity powers. No provisions in the Rent Act of 1947, as amended, restrict this Court's equitable powers to grant the requested type of damages in injunctive cases like the instant one. The applicable statute provisions found in the Rent Act of 1947, as amended, do not differ essentially from those of which the Supreme Court spoke in the Warner case. The Supreme Court there observed that except for limitations placed upon the court's equity powers by the penalty section, the equity powers were not limited. As defendant apparently recognizes, no action would lie under the penalty section for the type of damages sought here. Fleming v. Posternock, D.C., 71 F.Supp. 821. This Court long has possessed the equitable power, aside from specific statutes, to grant damages with an injunction. Because the statute here does not take away that power, this Court possesses that power in this action. The Warner case necessarily assumes that the incidental relief may be granted to a third party citizen, and need not be granted to the Government as complainant. Consequently, the fact that the equity court here might grant damages to the dispossessed

tenant, not to the Government as complainant, does not destroy the Court's jurisdiction.

Whether damages like those allegedly suffered by the tenant here could be recovered by the Government in an injunction action authorized by the Rent Act was expressly decided in Fleming v. Posternock, D.C.Pa.1947, 71 F.Supp. 821. In a clear decision, Judge Bard held, 71 F.Supp. page 823: "Although the instant case does not involve restitution, I think, nevertheless, that the principles and reasons underlying the decision in Porter v. Warner Holding Co. would support the issuance of the order presently requested by the Administrator. It seems to me that the relief here sought might qualify under either of the two theories which sustained the restitution order in Porter v. Warner Holding Co., namely:

(1) as an equitable adjunct to an injunction decree, or (2) as an order appropriate and necessary to enforce compliance with the Emergency Price Control Act."

Of the limitations imposed upon the court's equity jurisdiction by that part of the Rent Act which gave the right to recover damages from the landlord, and the Supreme Court's treatment of that question in the Warner case, the court held 71 F.Supp. page 823:

"It is my interpretation * * * that the Court was there speaking with regard to the precise problem before it—that is, that the word 'damages,' as there used, refers to damages for overcharges. As I understand that language, it means only that one may not obtain from a court of equity a remedy provided for him by § 205 (e) of the Act. As I have previously indicated, § 205(e) affords no remedy of damages for wrongful eviction; therefore, § 205(e) in no way conflicts with the jurisdiction of an equity court to grant the relief here requested.

"My conclusion is that this Court has jurisdiction to consider whether the order requested by the Administrator is necessary or proper under the circumstances here present."

These views appear sound and are applicable also to the instant case. The same conclusion was reached in Woods v. Hagen, (D.C., E.D., Ia., 1949) No. 467 Civil, dated April 5, 1949 (unpublished order).

In view of these premises, therefore, this Court possesses jurisdiction to grant damages to the dispossessed tenant in the injunctive action which the Expediter now brings, and the case must stand trial upon the factual matters at issue.

Defendants' motion for summary judgment and judgment on the pleadings must be, and hereby is, in all things denied. It is so ordered. An exception is reserved to defendants.