**Armin H. NANKIN and William C.P. Hoffmann, Plaintiffs,**

v.

**BEVERLY ENTERPRISES–WISCONSIN, INC., a foreign corporation, Defendant.**

**No. 91–C–623.**

United States District Court, E.D. Wisconsin.

Sept. 24, 1991.

Brian W. McGrath, Foley & Lardner, Milwaukee, Wis., for plaintiffs.

Brian C. Tyndall, Cook & Franke, Milwaukee, Wis., for defendant.

## ORDER

WARREN, Senior District Judge.

On July 29, 1991, this Court ordered the plaintiffs, Armin Nankin ("Nankin") and William Hoffmann, to pay into court *pendente lite* $280,590, the amount of the security deposit which had been given to them nine years and six months ago by the defendant, Beverly Enterprises ("Beverly"). Now before the Court is the plaintiffs' motion to partially vacate the July 29 order and to return the $280,590 in the court account to the plaintiffs.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On January 1, 1982, the plaintiffs and Beverly entered into a 10–year lease under which Beverly, the lessee, would run a nursing home out of the plaintiffs' property. Beverly paid $280,590 to the plaintiffs as a condition of the lease; this amount

was a security deposit which was to be returned in July, 1991 absent any default by the defendant (Lease, ¶ 5). The lease called for a base rent of $46,765 per month. Due to the length of the lease, the subsequent rents were to be adjusted on a yearly basis pursuant to a specific formula. Unfortunately, the complexity of that formula made it difficult for the plaintiffs and the defendant to agree upon a precise dollar figure, and the contractual "agreement" between the two parties was fraught with conflict and uncertainty.

In January of 1989, Nankin and Beverly reached a settlement regarding the rent due up through May of 1988. However, the plaintiffs claim that Beverly has only been paying a portion of the rent that is owed to them under the lease since June 1, 1988. Beverly insists that the rent it has been paying is the proper amount.

The plaintiffs filed a motion for eviction and damages in state court on June 6, 1991 which Beverly subsequently removed to this Court pursuant to 28 U.S.C. § 1441(a). The plaintiffs moved this Court to bifurcate the issues so they could first evict Beverly swiftly and then prove up their damages at trial. The Court denied the plaintiffs' request for separate hearings, since the eviction and damages issues were too intertwined to bifurcate.

At the next status conference on July 16, the plaintiffs moved for an early trial date. Since eviction constituted part of the relief for which they were arguing, they requested a date before the end of the year, at which time the lease would expire. The Court was unable to grant this request, since there was no room on its calendar to schedule that trial until after the new year. Then the parties moved together for an expedited ruling on Beverly's motion to pay rent into court *pendente lite*, which had been filed and answered before the conference.

In its motion, Beverly expressed concern that its security deposit would not be returned. A representative of Beverly had stated that Nankin told him that if Beverly did not reach a renewal agreement with the plaintiffs, the plaintiffs would keep Bever-

ly's security deposit as past rent due (Affidavit of James Pietrzak, ¶ 2). Since no renewal agreement was reached, Beverly assumed that the plaintiffs were planning on keeping the security deposit and applying it toward the alleged actual and projected deficiencies in the rent (Affidavit of Brian Tyndall, ¶ 10). As a result, Beverly contended that paying the plaintiffs a monthly rent while they were also in possession of the security deposit, which arguably should have been returned, would result in a windfall for the plaintiffs, one to which they were not entitled under the lease. It suggested, as an alternative to paying rent directly to the plaintiffs, that the accumulated rents in the holding account be paid back as the security deposit once litigation had ended. The plaintiffs would then be free to use the security deposit they were already retaining in lieu of rent.

The plaintiffs opposed Beverly's motion, arguing first that Beverly had an obligation to pay at least whatever rent it believed it owed to the plaintiffs while it was still in possession of the premises; and second, that Federal Rule of Civil Procedure 67, which the defendant had cited in support of its motion, was not applicable to the present circumstances. Rule 67 may be invoked by a party in an action who holds a sum of money that is in dispute. The plaintiffs stated that there was no dispute over whether Beverly owed the amount of rent it planned to pay; rather, the question was whether it owed more. Since Beverly admitted to owing at least that amount, it would be unfair to deprive the tenants of the steady stream of income for which they had contracted.

On July 29, this Court denied Beverly's motion and ordered it to continue to pay rent directly to the plaintiffs. However, Beverly's argument addressing the security deposit, which was not refuted by the plaintiff, was compelling enough for this Court to respond to its concerns and order the plaintiffs to pay the entire security deposit into a court account *pendente lite*. In effect, the Court was enforcing the lease to the extent it could be enforced. Since

the plaintiffs are currently receiving most of the rent to which they would have been entitled under their version of the lease, and the defendant is paying what it believes to owe under the lease, allowing the plaintiffs to keep money that would have had to be returned under the lease would indeed result in a windfall for them. However, Beverly may not claim this money as its own until it prevails at trial, successfully refuting the plaintiffs' allegations of default. The ownership of the security deposit will remain undetermined until one of the parties becomes entitled to it in February of 1992;[1] at that time, the money and its interest will be readily accessible to whichever party has rights in it and can be distributed with minimal expense and delay.

The July 29 order drew criticism from the plaintiffs, who objected to this Court's "*sua sponte*" action in depriving them of their property without due process. According to them, this Court granted Beverly either a prejudgment attachment or a preliminary injunction, neither of which was requested by the defendant. Moreover, this taking without notice to the plaintiffs resulted in a violation of their due process rights.

Beverly countered this construction of the Court's order by deeming the holding account "an appropriate exercise of the court's discretion under [Rule] 67." (Response Brief at 4). It provided further support by referring to the Court's inherent powers, which are not strictly defined and limited by the Federal Rules of Civil Procedure. It concluded that the Court did not exceed its authority in ordering the plaintiffs to pay the security deposit into an account *pendente lite*.

## II. ANALYSIS

■ Disputes involving commercial leases are traditionally resolved in state court. This Court, however, has proper jurisdiction over the present action pursuant to 28 U.S.C. §§ 1332(a) and 1441(a). Moreover, it is well settled that even though federal courts are courts of law, they are permitted to grant equitable relief. The Supreme Court has encouraged district courts to "do equity and to mould each decree to the necessities of the particular case." *Porter v. Warner Holding Company*, 328 U.S. 395, 398, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332 (1946). A court's equitable jurisdiction is broadly construed and may be circumscribed only by "clear and valid legislative command" or "a necessary and inescapable inference" in a restrictive statute. *Id.*

■ Equity may be defined as a "rejection of rigid rules to accomplish what is *fair and just* in a particular situation." *State of Illinois by the Illinois Department of Public Aid v. Heckler*, 616 F.Supp. 620, 622 (D.C.Ill.1985) (emphasis added). Rule 1 of the Federal Rules of Civil Procedure states that the Rules "shall be construed to secure the *just,* speedy, and inexpensive determination of every action." (emphasis added). It is clear that the interests of fairness and justice are at the core of this Court's authority and that the Court must act upon these mandates when they do not contravene obvious limitations on its power.

In its Order of July 29, 1991, this Court did not cite to any state or federal authority for its ruling, choosing instead to exercise its inherent powers mandated by the Constitution, the Federal Rules of Civil Procedure, and ironically, the plaintiffs' complaint at ¶ 6 where they requested "[s]uch other further legal or equitable relief as the Court deems just and proper." Although the plaintiffs and the Court are obviously not in accord as to what is actually "just and proper," the fact remains that the Court may use its discretion and sense of fairness throughout this proceeding to grant whatever type of relief it deems appropriate.

As long as there is no controlling case law or statute that prevents the Court from providing the type of remedy it did, the actions taken on July 29 are permissible. However, the plaintiffs have contended that this Court exceeded its jurisdiction by depriving them of their property without

---

**1.** This matter is scheduled for trial at that time.

notice, thereby violating the plaintiffs' right to due process as defined by *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) and its progeny. They have also claimed that the order to pay the deposit into court *pendente lite* was either a prejudgment attachment or a preliminary injunction, neither of which is appropriate *sua sponte.*

These arguments would have substantial weight if the plaintiffs were indeed the legitimate owners of the $280,590, or if the Court had issued its order before July 1. However, neither hypothetical situation applies; July 1 has come and gone, and the true owner of the security deposit is not ascertainable at this time. As the defendant points out, the only proffer of evidence submitted is in Nankin's affidavit, in which he asserts that "[t]he defendant was, in fact, in default under the Lease on July 1, 1991" (Affidavit of August 13, 1991, ¶ 5). Although this Court does not doubt Mr. Nankin's sincerity, saying so does not make it so. To take this statement as the truth would obviate the need for a trial. As tempting as that sounds, it would hardly serve the interests of justice.

As the Court has pointed out several times, the only way to resolve this case is to interpret the formula. Neither party has attempted to do so in any of the motions addressed to the Court. Once the formula is ascertained and applied, all the questions raised in this action may be answered—whether Beverly defaulted, whether the plaintiffs attempted a wrongful eviction, whether the security deposit must be returned to Beverly. For now, it is impossible to accept the blanket statements of either party concerning the ownership of the money without further evidence.

■ A prejudgment attachment, by its very definition, can only be executed against the property of another. *See Black's Law Dictionary,* "Attachment." It would be premature for the plaintiffs to claim that the Court violated their due process rights in its "prejudgment attachment" of the security deposit when the plaintiffs have not shown that they have any ownership rights in the money at all. In the brief filed before this Court, the plaintiffs have attempted to shift the burden of proof of ownership to the defendant ("The defendant may have a claim against the plaintiffs for some or all of [the security deposit], but only if the defendant can prove it is not in default under the Lease." Brief at 8). However, the plaintiffs must realize that in this matter, a dispute over the terms of a contract, the burden of proving that the tenants defaulted under the lease rests on them. *See* 4 Corbin on Contracts § 655 (1960); 7 Corbin § 1230; *Klug & Smith Co. v. Sommer,* 83 Wis.2d 378, 265 N.W.2d 269 (1978).

The plaintiffs have also disputed the *"sua sponte"* manner in which the Court has resolved this matter. However, their semantics will not change the fact that the defendant brought the matter of the security deposit to the Court's attention in its attempt to pay rent into court *pendente lite.* Beverly's argument stemmed from an apparent need to protect itself. The landlord had refused to return the security deposit or accept back rents, stating instead that rent payments would be applied to the alleged rent deficit accumulated since 1988. The plaintiffs never refuted this argument, choosing to rely on law holding that the obligation to pay rent exists independent of a landlord-tenant relationship. The Court recognized both arguments and fashioned a remedy taking into account each party's contentions. Although Beverly did not specifically request this remedy, there are certain situations in which a court may grant equitable relief that neither party requests if an unjust result would otherwise follow. *International Nikoh Corp. v. H.K. Porter Co.,* 358 F.2d 284 (7th Cir.1966).

■ The plaintiffs have insisted that this Court's reliance on fairness has backfired, depriving them of their property without citing any precedent upon which to base its decision. Wisconsin's case law and statutes are silent as to the disposition of a security deposit whose ownership is contested. Federal case law and statutes provide no help either. Most of the authority

to which the parties cite is not applicable to the facts of the case. However, in Federal Rules of Civil Procedure 1, there exists authority for this Court to do what it has done. Since there is no law that prevented the Court from depositing the security deposit in an escrow account, the Court's actions were proper.

The plaintiffs have also characterized this Court's actions as a "preliminary injunction." Perhaps they recognized the Court's attempt to preserve each party's *status quo* under the lease agreement. The Court, however, does not agree with the plaintiffs' terminology. If anything, the July 29 Order was an injunction compelling the defendant to pay rent to the plaintiffs throughout the remainder of its tenancy. The money in the escrow account may be treated as the bond that protects the defendant's interest in the money that might be theirs.

The plaintiffs were the party that originally requested equitable relief in the form of eviction. They then, in essence, petitioned the Court to allow them to enforce the lease agreement to the extent that it was not in dispute. Their request was granted and they are now receiving monthly payments from a lease agreement that they claim was breached. The plaintiffs may claim either that the lease was breached and that they are entitled to the security deposit, or alternatively, that the defendant must continue to make monthly rent payments. To grant both requests would result in a gross injustice to Beverly.

By ordering the plaintiffs to pay the money into a holding account, the Court merely compelled them to do what they had originally contracted to do ten years ago—that is, part with the security deposit. The purpose behind Beverly's motion to pay rents into court *pendente lite* was to "creat[e] a fund for prompt repayment of the security deposit at the conclusion of the litigation." Affidavit of Brian Tyndall at ¶ 13. The Court has granted the defendant's motion in spirit, if not in fact.

The timing of the plaintiffs' action has factored into today's decision. It is interesting that the plaintiffs endured nearly ten years of arguments over the amount of rent due, even settling once with Beverly, and found the situation intolerable one month before the security deposit was due to be repaid, with only seven months remaining on the lease.

The plaintiffs have failed to convince the Court that it erred when it ordered them to pay $280,590 into court *pendente lite*. Therefore, their motion to vacate the July 29 order is DENIED.

SO ORDERED.