**Wang Zong XIAO, Plaintiff,**

v.

**Janet RENO, in her capacity as Attorney General of the United States, et al., Defendants.**

**No. C–90–0350 WHO.**

United States District Court, N.D. California.

June 17, 1996.

**1378**

Cedric C. Chao, Morrison & Foerster, San Francisco, CA, for Plaintiff.

Mark Walters, Assistant Director, United States Department of Justice, Office of Immigration Litigation, Washington, D.C., for Defendants.

## ORDER SETTING CONDITIONS OF RELEASE

ORRICK, District Judge.

In an order filed May 3, 1996, in *Wang v. Reno,* the United States Court of Appeals for the Ninth Circuit ruled: "The appellee's motion for release is granted pending completion of proceedings in the Court of Appeals. Appellant [sic] shall be released upon conditions to be established by the district court."

"Appellee," known to this Court as plaintiff Wang Zong Xiao ("Wang"), comes now before the Court for the purpose of having the Court comply with the Ninth Circuit's order by establishing the conditions under which he is to be released. The Court has had the benefit of a United States Pretrial Services Agency ("Pretrial Services") Memorandum containing its research of alternatives to the detention of Wang and recommending certain conditions. In addition, the parties have provided the Court with comments, both oral and written, addressing the nature and types of conditions to be established.

### I.

This case has had a long and shameful history, of which the parties are well aware and which the Court will not here repeat. The essential facts of the case are described at length in the Court's opinion in *Xiao v. Reno,* 837 F.Supp. 1506 (N.D.Cal.1993), *aff'd,* 81 F.3d 808 (9th Cir.1996).[1] On October 6, 1993, the Court issued its Opinion and Order

permanently enjoining the INS and any other government entity from attempting to remove Wang from the United States or to return him to the custody of the People's Republic of China. *Id.* at 1564.

### II.

With respect to the conditions of Wang's release, Wang is essentially in agreement with the recommendations of Pretrial Services. In addition, Wang has requested that the Immigration and Naturalization Service ("INS") be ordered to provide him with the appropriate documentation reflecting his legal presence in the country and his right to be employed here.

The government vigorously disputes the propriety of, and the Court's authority in, ordering the production of such documentation for Wang. In addition, the government urges the Court to place much more stringent restrictions upon Wang.

### A.

Contending that Wang is a flight risk and poses a danger to the community, the government asks the Court to confine Wang to a halfway house, so that Wang is unable to leave at any time, during the first two months following his "release" from custody.

This the Court refuses to do. Such confinement would not, of course, comply with the Ninth Circuit's direction that Wang be *released.* The Court of Appeals has allowed this Court to place conditions on Wang's release, but those conditions cannot be so restrictive that they deprive Wang of his freedom to the same extent as being in the custody of the United States Marshals Service. To comply with the government's request would be to flout the Ninth Circuit's order. Moreover, given the fact that Wang has already been kept in custody, not charged with any crime, since 1988, the Court is astonished that the government would propose such an arrangement.

### B.

Wang asks that the Court order the INS to provide him with a completed and ap-

---

**1.** As the Ninth Circuit has noted, Wang's name was erroneously abbreviated to "Xiao" in earlier

proceedings. *Wang v. Reno,* 81 F.3d 808, 812 n. 2 (9th Cir.1996).

proved Form I–94 (arrival/departure record) and Form I–668B (employment authorization card). The I–94 will establish that Wang is lawfully present in the United States, and the I–668B will allow him to work.

The government is strongly opposed to what it characterizes as an "end run around normal immigration procedures." At the hearing, the government's counsel also contended that Wang cannot now argue that this Court has jurisdiction to order the issuance of immigration papers, because Wang has already argued successfully, both to this Court and to the Court of Appeals, that this case does not fall within the jurisdiction of the Immigration and Nationality Act (the "INA").

The government is correct that this case does not fall under the jurisdiction of the INA. Rather, the Ninth Circuit affirmed that this Court has jurisdiction over Wang's constitutional claims pursuant to both 28 U.S.C. § 1331 and the Court's inherent supervisory power to protect government witnesses. *Wang v. Reno,* 81 F.3d at 820.

■ The government errs, however, by arguing that the absence of INA jurisdiction prevents the Court from ordering the issuance of immigration documentation. The Court's inherent power to act as a court of equity, as it did in issuing the permanent injunction in this case, also provides the basis for the relief here sought by Wang.

■ "[W]here, as here, the equitable jurisdiction of the court has properly been invoked for injunctive purposes, the court has the power to decide all relevant matters in dispute and to award *complete relief*...." *Porter v. Warner Holding Co.,* 328 U.S. 395, 399, 66 S.Ct. 1086, 1090, 90 L.Ed. 1332 (1946) (emphasis added). The power to award complete relief includes the power to award " 'ancillary relief necessary to accomplish complete justice.' " *Reebok Int'l, Ltd. v. Marnatech Enter., Inc.,* 970 F.2d 552, 560 (9th Cir.1992) (quoting *FTC v. H.N. Singer, Inc.,* 668 F.2d 1107, 1113 (9th Cir.1982)).

*Lester v. Parker,* 235 F.2d 787 (9th Cir. 1956) (per curiam), is closely analogous to this case. There, the district court had found that certain Coast Guard regulations had denied the plaintiffs, merchant seamen, of their constitutional right "to seek and obtain private employment in one of the common walks of life." *Id.* at 788. Accordingly, the court had issued an injunction enjoining the defendants, Coast Guard officers, "from interfering with the employment of these plaintiffs, and from declining or refusing to take steps to advise shipping companies and unions that these seamen are entitled to employment." *Id.* In addition, and pertinent to Wang's situation, the court's injunction "direct[ed] the defendants to issue to these seamen documents showing they may be employed." *Id.* at 789.

On appeal, the defendants argued that the portion of the injunction requiring the issuance of emergency employment documents was unenforceable because it (1) granted mandamus relief beyond the district court's authority, and (2) called for "a validation of documents for emergency service which only the Commandant may grant" and that such relief could not be ordered unless the Commandant were joined as a defendant. *Id.*

The Ninth Circuit rejected the defendants' arguments and upheld the district court's injunction. In so holding, the Ninth Circuit explained:

The court here has done no more than to follow the recognized power of courts of equity in issuing injunctions, to make those injunctions effective by ancillary provisions, in aid of the injunction, which may require the defendant to do something....

The case, after all, was one instituted and still pending in the court below, which in issuing the injunction, had the inherent power possessed by any court of equity to make that injunction effective, and to prevent the frustration thereof.

*Id.* at 790 (footnote omitted).

The Ninth Circuit found that the district court's order requiring the defendants to issue employment documents was a proper "safeguard," because obtaining employment documentation was "essential to protection of [the plaintiffs'] right to work" and because the defendants themselves were responsible for endorsing such documents.[2] *Id.*

In addition, the Ninth Circuit concluded:

**2.** The Ninth Circuit also noted that the order

requiring endorsement of the employment docu-

The rationale supporting the power of a court of equity to frame its injunctive decrees in such manner as to prevent their frustration is also the foundation for the rule that ... *the courts have power to protect individual rights against unlawful and unauthorized administrative power.* The power and duty to protect such rights is fundamental; it springs from the very existence of courts, and that is particularly true, where the right, as here, is a constitutional one. It is unthinkable that the court below was without power fully and effectively to protect the rights which our decision said belonged to these plaintiffs.

*Id.* (internal quotation marks and citation omitted) (footnote omitted) (emphasis added).

In this case, if this Court were to deny the relief requested by Wang, it would fail to give full effect to its order permanently enjoining the government from removing Wang from the United States. Wang is, at this moment, a man without a country. He is in bureaucratic limbo. Without ready proof of his legal presence in the United States, Wang is potentially subject to arbitrary, repeated deportation attempts at the hands of INS officers ignorant of this Court's mandate. The Court has the power and, indeed, the *duty* to protect Wang from such "unlawful and unauthorized administrative power." *Id.*

■ Furthermore, without work authorization, Wang has no means to settle down in this country and live independently. In order to be rehabilitated successfully, Wang must have the opportunity to work, which can only be achieved with documents endorsed by the INS. As the Ninth Circuit stated in *Lester,* "the right to seek and obtain private employment in one of the common walks of life" is "a right 'entitled to constitutional protection', and to 'protection at the hands of a court of equity.'" *Id.* at 787.

Accordingly, the Court holds that, as an ancillary remedy necessary to provide Wang full and effective relief under the Court's injunction, the INS must provide Wang with the documentation necessary to allow him legally to remain in this country and to work.[3]

### III.

Accordingly,

IT IS HEREBY ORDERED that:

1. Wang shall be released from the custody of the United States Marshals Service to [redacted], where Wang will remain pending completion of proceedings in the United States Court of Appeals for the Ninth Circuit and until further order of this Court.

2. Wang may leave [redacted] for employment and educational purposes, and for any other reason subject to prior approval of Pretrial Services.

3. Wang may not have any contact with any known gang member.

4. Wang will keep in contact by telephone with Pretrial Services every weekday, Monday through Friday.

5. All visitors for Wang [redacted] must meet the prior approval of Pretrial Services.

6. Within ten days of receipt of the completed application forms from Wang's counsel, the INS shall endorse and deliver to the counsel the following documentation for Wang, which shall be legal and valid for all purposes:

a. A Form I–94 arrival/departure record providing that Wang's stay is "indefinite per order of the United States District Court."

b. A Form I–668B employment authorization card providing that the expiration date is "none," and the provision of law is "U.S. Dist. Court order."

7. The Court's Opinion and Order filed October 6, 1993, permanently enjoining the United States government, including the At-

---

ments did not require "certification that the seaman has been cleared after hearing"; rather, the order required simply that "it shall be stated that the seaman may work pursuant to decree of the court." *Lester,* 235 F.2d at 790. Similarly, here, the INS documents should simply state that Wang's presence in the country is pursuant to this Court's order.

**3.** The Court is shocked that it must order the government to do what, in justice, the government should long ago have volunteered to do: Give Wang the means to remain in this country after forcing him into exile from his own country.

torney General of the United States, the United States Attorney for the Northern District of California, the United States Marshals Service for the Northern District of California, the Immigration and Naturalization Service, and the District Director of the Immigration and Naturalization Service, from taking any action in furtherance of removing Wang from the jurisdiction of the United States or returning him to the custody of the People's Republic of China, or any of its representatives, remains in full force and effect.