UNITED STATES of America, Plaintiff,

v.

K–N ENTERPRISES, INC. and Leon
Kirschner, Defendants.

No. 78 C 2781.

United States District Court,
N. D. Illinois, E. D.

Nov. 9, 1978.

Frederick H. Branding, Asst. U. S. Atty., Chicago Ill., for plaintiff.

Allan A. Lapidus, Chicago, Ill., for defendants.

## DECISION ON MOTION FOR PRELIMINARY INJUNCTION

McMILLEN, District Judge.

This case comes on to be heard on the Government's Amended Motion for Preliminary Injunction and Temporary Restraining Order filed August 1, 1978. The Amended Motion has been allowed to stand with the Government's Second Amended Complaint for Injunction subsequently filed October 2, 1978. Defendants filed an answer on October 23, 1978, thereby putting both pleadings in issue. The parties have filed affidavits relating to the merits of the Government's Amended Motion and have supported their respective positions by memoranda, all of which have been considered as a substitute for testimonial hearing, if sufficient.

The Second Amended Complaint was filed pursuant to the civil enforcement provision of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 332(a)). It seeks to preclude the manufacture and distribution of certain specified drugs and devices until the requirements of the statute and the Food and Drug Administration regulations have been satisfied. Defendants have voluntarily agreed to cease distribution of the drugs until further notice, but they have not agreed to cease distribution of the devices nor to recall any drugs or devices which have already been distributed. We find and conclude that the drugs covered by the Second Amended Complaint should be recalled and not further distributed or manufactured until the F.D.A. regulations have been complied with, but that further proceedings may be necessary to determine what specific types of compliance are necessary. The government is not entitled to any relief with respect to the devices at this time, because their affidavits do not show a reasonable probability of prevailing on the merits.

*Deficiencies With Respect to the Drugs*

The drugs are those prepared by the defendants which contain Renacidin or Neomycin or a salt thereof. Section 331(a) prohibits the introduction into interstate commerce of any drug or device that is "adulterated or misbranded." Section 352(1) provides that an antibiotic drug is misbranded if its batch was not certified or released by the Secretary of H.E.W. pursuant to § 357. The government's evidence in the record shows without contradiction that the defendants' Neomycin sulfate solution was not so certified or released and therefore that it is misbranded within the meaning of § 352(1). (Affidavit of Frederic J. Geissel dated July 11, 1978.)

Likewise, § 355(a) requires that any new drug be approved by the F.D.A. before introduction into interstate commerce. No application was filed or approved for the defendants' Renacidin 10 percent solution. It must therefore be excluded from interstate commerce pursuant to § 331(d). *E. g., United States v. Nutrition Service, Inc.,* 227 F.Supp. 375 (W.D.Pa.1964), *aff'd,* 347 F.2d 233 (3d Cir. 1965).

We will enter a preliminary injunction *pendente lite* with respect to the two drugs covered by the Second Amended Complaint on the grounds of failure to obtain the required certification and approval. We find and conclude that the government is likely to prevail on these issues and that the harm which may be inflicted upon the public by the defendants' continued distribution of these drugs greatly outweighs the possible damage inflicted upon the defendants. The government has no adequate remedy at law, and we find that all of the other requirements for the exercise of this equitable jurisdiction are satisfied. *Banks v. Trainor,* 525 F.2d 837 (7th Cir. 1975), cert. den. 424 U.S. 978, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976).

The government further seeks the injunction on the grounds of defendants' improper manufacturing processes, supported by an affidavit of William R. Clark dated July 13, 1978. Mr. Clark's affidavit is based primar-

ily upon reports of government inspections made at the defendants' establishment during May 1978. They qualify as official records under Rule 803(8) and are not contradicted by defendants. In fact according to par. 15 of the affidavit, defendant Kirschner has acquiesced in these issues. Therefore, the government is entitled to a preliminary injunction against manufacturing or distributing the drugs, on the basis of improper manufacturing or processing procedures. 21 U.S.C. § 351(a)(2)(A) and (B) and 21 C.F.R. 211. An affirmative mandatory injunction will not be issued ,with respect to manufacturing procedures at this time, however.

The government also contends that the foregoing drugs are "adulterated" within the meaning of § 351(a) and (c) because their purity and quality are deficient. Here the government relies on the affidavit of its expert, Mary K. Bruch, who reviewed the qualitative analyses performed by its technicians. On this point, however, defendants have filed a counteraffidavit of John Giesing who supervised sterility tests and found no deficiency in that respect in the two drugs. The government's affidavit does not satisfy the hearsay requirements of Rule 803. Nor are we able to determine on the basis of conflicting affidavits that the government has a reasonable likelihood of prevailing on the issue of sterility or quality. Therefore, we will not issue a preliminary injunction on these grounds.

The government does not support its contention that the drugs are misbranded because of inadequate labelling under § 352(f)(1). Hence no preliminary injunction can be granted on this ground.

### Deficiencies With Respect to the Devices

■ The Second Amended Complaint also seeks relief against certain devices known as Opti Disposable Ophthalmic Dressing Tray and Sterile Vent-Air Refresh Ophthalmic Irrigating Solution. We find and conclude that these devices are covered by the definition in § 321(h)(3) in that they are for use in human eyes. However, genuine issues of material fact exist with respect to the sterility and quality of these devices. Specifically, the affidavits of Mary K. Bruch on behalf of the government and John Giesing on behalf of the defendants are in such conflict with each other that we cannot at this juncture find that the government has a reasonable likelihood of prevailing on the merits with respect to the two devices. As to manufacturing procedures, the government relies on the incorporated and republished affidavit of William R. Clark, but this was directed toward the drugs. Since his original affidavit did not clearly apply to the manufacturing processes employed for the devices, the government lacks the necessary likelihood of prevailing on this issue. Prior approval procedures (§§ 355 and 357) apply only to drugs, and not to devices.

### Recall of the Drugs

■ The remaining contested issue concerns whether or not this court has the power to order the defendants to recall the two drugs which have not been properly approved or certified. There is no specific authority in the statute for requiring recalls. We are, however, granted the specific jurisdiction "to restrain violations of section 331." 21 U.S.C. § 332(a). The word "restrain" in our opinion is broad enough to cover affirmative or mandatory relief, as was pointed out by *Mitchell v. DeMario Jewelry, Inc.,* 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960); see also *United States v. City of Chicago,* 549 F.2d 415, 440–41 (7th Cir. 1977).

■ More significantly, we believe that our general equity jurisdiction suffices for the authority to order a recall, since the statute by which we are given jurisdiction over this controversy does not preclude such relief. In *Porter v. Warner Holding Co.,* 328 U.S. 395, 397–98, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332 (1946), the court stated:

. . . the court may go beyond the matters immediately underlying its equitable jurisdiction and decide whatever other issues and give whatever other relief may be necessary under the circumstances. Only in that way can equity do

complete rather than truncated justice. . . .

Moreover, the comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied. "The great principles of equity, securing complete justice, should not be yielded to light inferences or doubtful construction."

.    .    .    .    .

[citations omitted].

Since we have no doubt that this court has the power to require defendants to recall the drugs, the remaining question is whether this equitable relief should be granted under the present circumstances. The potential harm to the public in consuming drugs which have not been approved or certified in accordance with the law is self-evident. Otherwise the requirements for prior approval, certification of batches, and good manufacturing procedures would constitute gratuitous intermeddling by the government. Paragraph 4 of the Bruch affidavit specifies the type of harm which can be caused by non-sterile drugs. The damage possibly sustained by the defendants because of an improper recall is outweighed by this threatened harm and by their undisputed violation of §§ 351(a)(2), 355(a), and § 357 of the Act.

The government is authorized by § 334(a) of the Act to seize the products; recall is considerably less burdensome to the government and hardly more burdensome to the manufacturer, who contends that few if any drugs remain in commerce. These considerations were lacking in *United States v. C. E. B. Products, Inc.,* 380 F.Supp. 664 (N.D.Ill.1974), in which recall was denied not solely because of lack of power in the District Court but also because of a failure to find that the public and not the defendant would be irreparably damaged. We find not only irreparable damage to the public in the case at bar, but also that the damage to the public greatly outweighs the potential damage to the defendants. The other requirements for a preliminary injunction, including recall, have been satisfied, as discussed above.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the government's Amended Motion for a Preliminary Injunction is granted with respect to the distribution and sale of the drugs containing Renacidin and Neomycin or a salt thereof, and the government's prayer, that such drugs which have been distributed into interstate commerce shall be recalled by defendants, is granted. The remaining portions of the government's Amended Motion for a Preliminary Injunction are denied on the basis of the present record.

This case is set for a pre-trial conference on Thursday, November 16, 1978 at 9:30 a. m. for the entry of an appropriate injunction order to be prepared and served on defendants by the government, and for the consideration of any further proceedings herein.