**UNITED STATES of America**

v.

**SUPERPHARM CORPORATION, a corporation, and Norman E. Rubin, an individual, Defendants.**

No. CV–81–0087.

United States District Court, E. D. New York.

Dec. 8, 1981.

George M. Burditt, James A. Davids, and Deborah B. Norton, Burditt & Calkins, Chicago, Ill., for defendants Superpharm Corp. and Norman E. Rubin.

## MEMORANDUM OF DECISION AND ORDER

COSTANTINO, District Judge.

This is an action under the Federal Food, Drug and Cosmetic Act ("the Act") 21 U.S.C. § 301 *et seq.* to enjoin alleged violations of the Act and for other forms of relief. The suit, initiated in January, 1981, contends that Superpharm Corporation ("Superpharm"), and Norman E. Rubin, president of Superpharm, engaged in the manufacture and distribution of a human drug, furosemide, in the absence of approval by the Food and Drug Administration ("FDA"). Specifically, defendants are alleged to be violating drug approval provisions that prohibit the marketing of "new drugs", 21 U.S.C. § 321(p), in interstate commerce without FDA approval. *See* 21 U.S.C. §§ 331(d) and 355(a).

On January 9, 1981 this court issued a restraining order prohibiting the further manufacture or sale of this drug unless and until approval is obtained from the FDA. Upon mutual consent of the parties, this order remains in effect pending the outcome of this decision. Although settlement discussions ensued and numerous issues resolved, the parties have been unable to settle whether this court has the authority to order the recall of drug products improperly marketed in interstate commerce. Thus, this issue is now before the court.

The Government maintains that this court has the authority pursuant to section 302 of the Act, 21 U.S.C. § 332, to order a recall. Section 302 provides in pertinent part that:

> the district courts of the United States ... shall have jurisdiction, for cause shown, *to restrain violations* of Section 301 of this Title ... (emphasis supplied)

In addition, the Government contends that the court's general equitable power also authorizes the issuance of a recall order. (*Cit-*

Abraham Y. Skoff, Asst. U. S. Atty., Edward R. Korman, U. S. Atty., E. D. N. Y., Brooklyn, N. Y., for the U. S.

ing *Mitchell v. DeMario Jewelry, Inc.*, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960); *Porter v. Warner Co.*, 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1945).) After examining both the case law and the Act's legislative history, it is quite apparent that there is little support for the Government's position. The prevailing law on the subject leads this court to conclude that no such statutory or equitable power exists, and that to order a recall would be an abuse and/or an improper use of its power. Thus, for reasons set forth below, the Government's request for an order mandating the recall of the drugs now on the market is denied.

An examination of the Act itself reveals that Congress specifically did not include a judicially ordered recall remedy when the Act was passed. It did, however, provide a threefold enforcement scheme: (1) injunctive relief, 21 U.S.C. § 332; (2) criminal prosecution, 21 U.S.C. § 333; and (3) seizure, 21 U.S.C. § 334. Moreover, in reading the legislative history behind the Act when passed in 1938, it is clear that Congress considered seizures to be the most drastic remedy, and that the injunction remedy was included to temper the hardship inherent in seizures:

> In some cases it should avoid the hardship and expenses to litigants in seizure cases. In many instances seizure is a harsh remedy and should be discouraged ... In many instances it is believed ... injunctions can be used with equal effectiveness and with less hardship.

H.R.Rep.No.2139, 75th Cong., 3d Sess. 3–4 (1938). Thus, injunctive relief was obviously viewed as a means to alleviate the hardship seizure might cause to manufacturers, and given this orientation, it is difficult to conclude that Congress intended Section 302(a) to authorize judicial recalls. *United States v. C. E. B. Products, Inc.*, 380 F.Supp. 664, 668 (N.D.Ill.1974).

 In effect, the Government is asking this court to do something that the FDA itself cannot do. While there are provisions in the FDA regulations which provide for recalls, recalls cannot be ordered by the FDA, *see* 21 CFR § 7.40(a), as they are usually undertaken voluntarily, 21

CFR § 7.40(a), at the request of the FDA. 21 CFR § 7.40(b). *See generally* 21 CFR § 7.1, *et seq.* The authorized vehicle for FDA removal of goods from the marketplace is the seizure remedy. 21 U.S.C. § 334. It is simply not within the FDA's stated authority to order a manufacturer to recall its own goods.

 If for medical and public safety reasons the FDA believes the removal of the restrained pharmaceutical product is imperative, they have the seizure remedy at their disposal. To order a recall under the Act would be an unwarranted act of judicial legislation because the FDA, through the Government, and/or the Government itself, would have yet another method of attacking the allegedly illegal distributions of drugs without being restricted by either the Act or the regulations promulgated thereunder. Recalls are simply not within the enforcement powers of the Act, and the court perceives no reason to expand the remedies currently in effect by including such a remedy. *See United States v. C. E. B. Products, Inc., supra; see also National Confectioners Assoc. v. Califano*, 569 F.2d 690 (D.C.Cir.1978).

 In the alternative, the Government argues that the court's inherent equitable power includes the power to order a recall. In support, the Government cites two Supreme Court cases, *Mitchell v. DeMario Jewelry, Inc., supra; Porter v. Warner Co.*, 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1945), which admittedly contain persuasive language. Upon an examination of the cases, however, it appears that the use of the court's equitable power in those cases was necessary to accomplish the purposes of the legislation, and absent such power, the statutes would have been unenforceable.

In *Mitchell v. DeMario, supra*, the court exercised its equitable powers to order the reimbursement of lost wages to employees who had lost their positions after bringing suit under the Fair Labor Standards Act of 1938 ("FLSA"). The effectiveness of the FSLA's enforcement, as structured by Congress, was completely dependent on employees' coming forward to reveal labor abuses. In the absence of judicially-mandated reim-

bursement for the lost wages of these employees awaiting reinstatement (as provided by § 15(a)(3) of the FLSA), the purposes of the FLSA clearly would have been frustrated. The *DeMario* court recognized the need to act in equity so as to enact more fully the purposes and powers of the FLSA.

Similar reimbursement actions were deemed to be within the court's equitable powers of relief in *Porter v. Warner Co.*, 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1945), relied on in *DeMario.* The Supreme Court in *Warner* so held in order to implement fully the provisions of the Emergency Price Control Act of 1942 ("EPCA"), which set maximum rents that landlords could charge. The *Warner* court ordered reimbursement for those tenants who had come forward to protest their landlord's violation of the EPCA.

Clearly, it must be acknowledged that in *DeMario* and *Warner,* the use of the court's equitable powers was necessary for the realistic enforcement of the specific provisions in the respective statutes. In *DeMario,* no employee would come forward to reveal FLSA abuses; in *Warner,* no tenant would reveal his landlord's illegal rents. The Supreme Court's decisions in these cases were obviously concerned with protecting those who come forward to expose violations of the law and without whom enforcement would have been impossible. To rely on these cases for the general proposition that a court may, in its exercise of its equitable powers, grant relief other than that explicitly provided for, is to ignore the legislative and policy background for both the *DeMario* and *Warner* decisions.

■ In the instant case, resort to ancillary remedies through equitable powers is unnecessary to enforce the spirit, as well as the letter, of the Act. The FDA's statutory remedies provide for sufficient means to enforce the Act, and the legislative history and the Act itself manifest a reluctance to expand enforcement powers to the point where they are punitive. *See* H.R.Rep.No. 2139, 75th Cong., 3d Sess. 3–4 (1938). Moreover, the seizure remedy exists if the FDA perceives a potential public danger which must be rectified immediately, or if the manufacturer or distributor refuses to remove the illegal product from the market. Although the court's duty is heightened when, in a case such as this, the public interest is involved, the Government and the FDA have the tools at their disposal to solve the problem and there is no need to attempt to add to those powers when not necessary. No resort to, or expansion of, the court's equitable power is needed to remove these drugs from interstate commerce. *See United States v. C. E. B. Products, Inc., supra; contra United States v. K–N Enterprises, Inc.,* 461 F.Supp. 988 (N.D.Ill.1978).

Accordingly, the Government's request for an order recalling the drugs from the marketplace is denied.

So Ordered.