Chico ANTONE, et al., Appellees,

v.

John R. BLOCK, individually and in his capacity as Secretary of Agriculture, et al., Appellants.

No. 80–1053.

United States Court of Appeals, District of Columbia Circuit.

Argued March 23, 1981.

Decided Aug. 10, 1981.

Wendy M. Keats, Atty., Dept. of Justice, Washington, D. C., with whom Alice Daniel, Asst. Atty. Gen., Charles F. C. Ruff, U. S. Atty. and Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C., were on brief for appellants.

Kathleen A. McKee, Alexandria, Va., for appellees. Ronald F. Pollack and Cynthia G. Schneider, Washington, D. C., were on the brief for appellees.

Before ROBB, WILKEY and GINSBURG, Circuit Judges.

Opinion for the court filed by Circuit Judge ROBB.

ROBB, Circuit Judge:

This case presents the question whether the Department of Agriculture's (Department) administration of federal food programs on Indian lands pursuant to the Food Stamp Act of 1977[1] violates both the mandate for expeditious implementation in the Act, Pub.L. No. 95–113, § 1303(a), 91 Stat. 979 (1977) codified at 7 U.S.C. § 2011 note (Supp. III 1979) and the requirements of section 706(2) of the Administrative Procedure Act (APA), 5 U.S.C. § 706 (1976). The United States District Court for the District of Columbia held that the Department's timetable for implementation of certain Indian-related portions of the Act (7 C.F.R. § 283.5(m), 44 Fed.Reg. 35904–35943 (June 19, 1979)) violated section 1303(a). *Antone v. Bergland*, No. 78–2173 (D.D.C. Nov. 14, 1979). We reverse.

## I.

The Food Stamp Act of 1977, which was enacted on September 29, 1977 as an amendment to the Food Stamp Act of 1964,[2] provides for several reforms of importance for reservation-dwelling Indians. The relevant reforms include: (1) concurrent operation of the Food Stamp Program (i. e., distribution of coupons to be exchanged for food) and the Food Distribution Program (i. e., direct distribution of food), 7 U.S.C. § 2013(b) (Supp. III 1979); (2) provision for direct administration of the programs by Indian Tribal Organizations as an alternative to state administration, 7 U.S.C. §§ 2013(b), 2020(d) (Supp. III 1979); (3) full reimbursement of Tribal Organization administrative expenses relating to the programs, 7 U.S.C. §§ 2013(b), 2025(a) (Supp. III 1979); (4) a requirement that

states continuing to administer the programs consult in good faith with the tribal governments about program operations, 7 U.S.C. § 2020(d) (Supp. III 1979); and (5) improvement of the nutritional value of the food package supplied to Indians. 7 U.S.C. § 612c note (Supp. III 1979). Although the 1964 Act (under which all qualifying Indian households were eligible to participate in the Food Stamp Program) was to remain in effect until the Department could implement the 1977 Act reforms, § 1303(a), Congress indicated its desire for speedy implementation of the 1977 provisions by including the following language in section 1303(a), 7 U.S.C. § 2011 note (Supp. III 1979) of the Act:

> The Secretary of Agriculture shall implement the Food Stamp Act of 1977 as expeditiously as possible consistent with the efficient and effective administration of the food stamp program.

The legislative history of this provision suggests that Congress envisioned a delay of six to nine months between the effective date of the Act (October 1, 1977) and the issuance of implementing regulations.[3]

As required by section 4(c) of the Act, 7 U.S.C. § 2013(c) (Supp. III 1979), the Department conducted a rulemaking proceeding regarding, in part, the reforms we have mentioned. 5 U.S.C. § 553 (1976). Because agency priority was given to other provisions of the 1977 Act,[4] proposed regulations for implementing the reforms were not issued until December 8, 1978, more than fourteen months after enactment of the legislation. 43 Fed.Reg. 57798–57820 (Dec. 8, 1978). Final regulations were published on June 19, 1979, almost twenty-one months after passage of the Act. 7 C.F.R. § 283.-

---

**1.** Pub.L. No. 95–113, 91 Stat. 958, 7 U.S.C. § 2011 *et seq.* (Supp. III 1979).

**2.** Pub.L. No. 88–525, 78 Stat. 703 (1964), as amended by Pub.L. No. 91–671, 84 Stat. 2048 (1971), 7 U.S.C. § 2011 *et seq.* (1976).

**3.** *See, e. g.,* 123 Cong.Rec. 16342 (1977) (remarks of Senator Clark); 123 Cong.Rec. 16282, 16285 (1977) (remarks of Senators McGovern and Humphrey). Although the cited remarks refer to another provision of the 1977 legislation, Congress did not want the provision re-

ferred to by those remarks to be implemented in advance of the provisions at issue in this case. *Indiana Welfare Rights Organization v. Bergland,* 598 F.2d 1055, 1057 (7th Cir. 1979). (Br. of Antone, at 22–26)

**4.** The Department concentrated its initial efforts on implementation of 7 U.S.C. § 2017 (Supp. III 1979), which deals with elimination of the food stamp purchase requirement (EPR). (Br. of Department at 23–25)

5(m), 44 Fed.Reg. 35932–35933 (June 19, 1979). The final regulations contained a timetable providing for implementation of the Indian-related programs within 150 to 240 days following receipt by the Department of an Indian Tribal Organization's application.[5] The timetable varied depending upon (1) the period of time within which the Department could accept or reject a Tribal Organization's application to administer a program, and (2) the amount of time that the Tribal Organization (or the state, if the Tribal Organization was found to be unqualified) had, following approval of the application, to commence operating a pro-

gram that complied with federal standards. *See* n.5 *supra;* (Department's Br. at 6–7). In short, assuming receipt of a Tribal Organization's application by the Department on June 19, 1979 the programs were to be implemented within approximately twenty-six to twenty-nine months following passage of the Act, a time period much in excess of the schedule contemplated by Congress. *See* n.3 *supra.*

This action was filed in the United States District Court for the District of Columbia in November 1978, prior to the issuance of the proposed regulations, by a group of individual Indians, Indian tribes, and two

---

**5.** 7 C.F.R. § 283.5(m), 44 Fed.Reg. 35932–35933 (June 19, 1979), provides:

(m) *Implementation.* The State agency shall implement changes required by amendments to these regulations in accordance with schedules specified in the amendment.

(1) *Amendment 141.* (i) If an ITO currently participates in, but does not administer, the Food Distribution Program:

(A) FNS shall determine tribal eligibility and capability to administer the Food Distribution Program within 60 days of receipt of a completed application. If an incomplete application is received, FNS shall within 15 days, notify the ITO of what additional information is required. If an otherwise completed application was received by FNS prior to the effective date of these regulations, but as a result of these regulations additional information is now required, FNS shall promptly notify the ITO of what additional information to submit. If the ITO submits the necessary additional information on an application received by FNS prior to the effective date of these regulations within 15 days of the request for additional information from FNS, the 60 days to determine capability shall continue to date from receipt of the initial completed application. Otherwise, the processing time for the capability determination shall start from the date the additional information is received by FNS.

(B) Upon FNS' determination that the ITO will administer the Food Distribution Program, FNS shall expeditiously plan for and provide needed training and technical assistance to facilitate timely commencement of tribal administrative responsibilities. The ITO shall have 120 days from FNS' determination in (A) to submit and have approved a plan of operation, operating manuals, and to commence program operations under the regulations as specified in this Part. Extensions may be granted by FNS to Indian tribal organizations if good cause is shown.

(C) If FNS determines that an ITO is not capable of administering the Food Distribution Program, FNS shall direct the State to continue program operations and to submit a new plan of operations and to commence program operations under the regulations as specified in this Part within 120 days from FNS' determination in (A).

(ii) If an ITO currently administers the Food Distribution Program, the timeframe specified in paragraph (i) above apply except that:

(A) FNS shall determine tribal eligibility and capability to administer the Food Distribution Program within 30 days of receipt of a completed application.

(B) If FNS determines that the ITO will not administer the Food Distribution Program, FNS shall direct the ITO to continue program operations until the State government can commence program operations. The State government shall have 120 days from FNS' determination in (A) to submit and have approved a plan of operation and to commence program operations under the regulations as specified in this Part.

(iii) If an ITO does not currently participate in a Food Distribution Program, the timeframes in subparagraph (i) above apply except that if FNS determines that an ITO can not administer the Program, FNS shall direct the State to submit a plan of operation and to commence program operations under the regulations as specified in this Part within 180 days from the determination.

(iv) Extensions to the above implementation timeframe (except for those timeframes set forth in paragraphs (i)(A) and (ii)(A) of this subsection) may be granted by FNS to ITO's or State government agencies if there is compelling justification involving circumstances which were not reasonably foreseeable and which are not the fault of the ITO or the State agency and which circumstances present extraordinary problems that would render earlier implementation impossible.

Indian organizations (Antone). *Antone v. Bergland,* No. 78–2173 (D.D.C. Nov. 14, 1979). Antone alleged that the time spent in issuing the regulations constituted unreasonable delay in violation of section 1303(a) of the Act and 5 U.S.C. § 706(1) of the APA, as well as an abuse of discretion by the Department. (Complaint at 21–23) Both a declaratory judgment and an injunction against further delay by the Department were requested of the court. *Id.* at 24. Despite issuance of the proposed regulations approximately one month after the commencement of this suit, Antone continued to press the action, now alleging that the timetable contained in the proposed regulations and the pre-issuance time period together amounted to unreasonable delay in implementing the relevant reforms. *Antone v. Bergland, supra* at 2. Antone requested injunctive relief from the court in the form of a more expeditious timetable. *Id.* at 5. The Department contended that the regulations had been issued as expeditiously as possible given the comprehensive task of implementing the 1977 Act and that in any event the timetable contained in the final regulations was reasonable and fully supported by the rulemaking record. *Id.*

The District Court granted summary judgment in favor of Antone. *Id.* at 12. The court held that

> the implementation schedule portion of the regulations, 7 C.F.R. § 283.5(m), 44 Fed.Reg. 35932–33, when considered together with the delay in promulgating the regulations, violates the statutory mandate for expeditious implementation provided in Section 1303(a) of Pub.L. 95–113, and must thus be set aside. In its place, the Court will impose a new implementation schedule consistent with the requirements of Section 1303(a).

*Id.* at 9. The court issued an amended timetable requiring the Department to implement all Indian-related programs within a maximum of 150 days from the receipt of a Tribal Organization's application. (J.A. at 76–79) The decision of the District Court is now before us on appeal by the Department.

## II.

Section 706 of the Administrative Procedure Act, 5 U.S.C. § 706 (1976), states in relevant part that in a case like the one before us, the reviewing court shall

> (1) compel agency action unlawfully withheld or unreasonably delayed; and
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>
> > (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> >
> > \* \* \* \* \* \*
> >
> > (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> >
> > (D) without observance of procedure required by law;
> >
> > (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; . . . .

In reviewing regulations for which a rulemaking record exists, this court must, pursuant to 5 U.S.C. § 706(2)(C) and (E) above, inquire not only into the delay in issuing the timetable which may be a violation of the statutory right to expedition expressed in section 1303(a) of the Food Stamp Act (5 U.S.C. § 706(2)(C)), but also into the existence of substantial evidence in the record supporting the timetable (5 U.S.C. § 706(2)(E)).

The section 706(2)(E) inquiry concerning the timetable in this case is distinct from the section 706(2)(C) question of pre-issuance delay which may also be a violation of section 1303(a) of the Food Stamp Act. Two separate instances of delay are alleged in this suit—(1) the pre-issuance delay of twenty-one months between enactment of the statute (Oct. 1, 1977) and the issuance of final implementation regulations (June 19, 1979); and (2) the alleged delay caused by the 150-day to 240-day implementation time period contained within the timetable of the final regulations. They must be treated separately because only the latter is

subject to the substantial evidence test of the APA. Even if we agreed with Antone that the timetable was not issued with appropriate expedition, that delay alone would not warrant an order setting aside the timetable.

*The Pre-Issuance Delay*

It is undisputed that the final regulations were issued approximately twenty-one months after passage of the Act. Whether this pre-issuance delay violates section 1303(a) of the Act is a question which we need not decide, for as noted below, we find the timetable contained within the final regulations to be supported by substantial evidence. A delay in issuing the timetable would provide no basis for setting aside the timetable itself. In *Rios v. Butz*, 427 F.Supp. 534 (N.D.Cal.1976) a delay of approximately ten months in implementing food stamp program reforms was found to be unreasonable. *Id.* at 536–37. The District Court declined, however, to disturb the timetable issued in the unreasonably delayed regulations. Viewing the evidentiary basis for the timetable independently of the pre-issuance delay, the court could find "no evidence that the [implementation schedule of the timetable] was unreasonably long for the package of regulations involved here." *Id.* at 536, n.10.[6]

*The Timetable in the Final Regulations*

Whether the timetable is valid depends upon the presence of substantial evidence in the rulemaking record to support the timetable schedule. 5 U.S.C. § 706(2)(E). *Rios v. Butz, supra.* The District Court however held that the cumulative impact of the two perceived delays was relevant; and at the same time the court ignored the evidentiary support for the timetable. *Antone v. Bergland, supra* at 9. On both counts the court erred.

No one disputes that there was full support in the rulemaking record for the timetable issued in the final regulations. Not one comment was received from the Indians or others suggesting an implementation time limit of less than the maximum which was established. Indeed, numerous parties requested longer time limits. (Department's Br. at 21–22) The timetable clearly has a rational basis in, and is fully supported by, the rulemaking record. Unless these regulations can be shown to be arbitrary, irrational, unconstitutional, or contrary to statute, which they are not, we must defer to the agency determination of the proper implementation schedule. 5 U.S.C. § 706(2). *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

The District Court's reliance on *Calvert Cliffs Coordinating Committee v. AEC*, 146 U.S.App.D.C. 33, 449 F.2d 1109 (1971) and *Rios v. Butz, supra,* to support its setting aside of the timetable was inappropriate. In the *Calvert Cliffs* case this court held that the implementation by the Atomic Energy Commission, fourteen months after enactment of the National Environmental Policy Act of 1969, of certain nuclear power plant licensing procedures was illegal because of substantive defects in the regulations themselves as evidenced by the rulemaking record. *Id.* at 1121–22. The court set aside one of the timetables contained in the regulations and remanded to the agency for further action, but did not modify the timetable. *Id.* at 1128–29. In *Rios v. Butz*, the court, as noted above declined to disturb the timetable despite the pre-issuance delay because the schedule was fully supported by the rulemaking record. The pre-issuance delay in issuing a timetable cannot alone provide a basis for setting aside the timeta-

---

**6.** We note in passing that the section 1303(a) expedition requirement states that the Act's reforms should be implemented as quickly as possible "consistent with the efficient and effective administration of the food stamp program as a whole." 7 U.S.C. § 2011 note. Lacking knowledge of the number of matters demanding attention from the Department during the period preceding issuance of the final regulations in this case, we cannot be certain that the delay in question was violative of the expedition requirement. *See Wright v. Califano*, 587 F.2d 345, 351–54 (7th Cir. 1978); *Open America v. Watergate Special Prosecution Force*, 178 U.S.App.D.C. 308, 318 note 17, 547 F.2d 605, 615 note 17 (1976); Note, "Judicial Resolution of Systemic Delays in Social Security Hearings", 79 Colum.L.Rev. 959 (1979).

ble when it is supported by substantial evidence in the record.

The District Court's citation of *NRDC v. Train*, 166 U.S.App.D.C. 312, 510 F.2d 692 (1975) to support its action is similarly inapposite. In the *NRDC* case we affirmed a district court's issuance of a timetable for agency action when no regulations at all had been issued and when there was an express statutory requirement—not simply a direction for due expedition—that regulations be issued within one year of the enactment of the Federal Water Pollution Control Act. *Id.* at 704–05. In this case, on the other hand, the regulations have been issued in final form and there is no basis in the rulemaking record for a holding that the timetable within the regulations is unsupported by substantial evidence.

Finally, the District Court was not acting within the scope of its equitable discretion by seeking, through the substitution of a new timetable, to compel what it perceived as unreasonably delayed agency action. *Antone v. Bergland, supra* at 9–10, *citing NRDC v. Train, supra.* An equity court's powers are greatest where, as here, the public interest is involved, but these powers are necessarily limited by a clear and valid legislative command counseling against the contemplated judicial action. *Porter v. Warner Holding Co.*, 328 U.S. 395, 398, 66 S.Ct. 1086, 1089, 90 L.Ed. 1332 (1946). The remedy adopted by the District Court, i. e., the modification of the timetable, contravened the clear and valid legislative command of the APA that regulations are not to be disturbed unless they are so irrational or unsupported by substantial evidence as to violate 5 U.S.C. § 706(2).

Because the timetable contained in 7 C.F.R. § 283.5(m), 44 Fed.Reg. 35932–35933 (June 19, 1977) was supported by substantial evidence in the rulemaking record, we reverse the District Court's setting aside of portions of the timetable and the substitution of new schedules therefor. The Department's regulations are valid.

*Judgment in accordance with this opinion.*